```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF TEXAS
                    DALLAS DIVISION
```

CARL L. YECKEL,                    §
                                   §
              Plaintiff,           §
                                   § Civil Action No. 3:06-CV-0105-D
VS.                                §
                                   §
THE CARL B. AND FLORENCE E.        §
KING FOUNDATION RETIREMENT         §
PENSION PLAN AND WELFARE           §
BENEFIT PROGRAM, et al.,           §
                                   §
              Defendants.          §

## MEMORANDUM OPINION AND ORDER

The court must decide whether this lawsuit is barred by the *Rooker-Feldman* doctrine or under the doctrine of res judicata and whether the court should award sanctions against plaintiff and his counsel under Fed. R. Civ. P. 11. For the reasons that follow, the court holds that the case is not barred by *Rooker-Feldman* but is precluded by res judicata and therefore dismisses it with prejudice. The court denies the Rule 11 motion without prejudice.

                            I

Plaintiff Carl L. Yeckel ("Yeckel") sues defendants The Carl B. and Florence E. King Foundation Retirement Pension Plan and Welfare Benefit Program ("Pension Plan") and The Carl B. and Florence E. King Foundation ("Foundation") to recover statutory penalties and a fine under 29 U.S.C. § 1132(a)(1)(A) and (c), provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, and for declaratory judgment, an

injunction, turnover, and attorney's fees.[1]  He was formerly the Foundation's President, Chair of the Board of Directors, and Chief Executive Officer.  Yeckel maintains that he is entitled to recover retirement pension and welfare benefits under the terms of the Pension Plan,[2] an ERISA-covered plan to which he is contractually entitled to benefits under the terms of a 1983 employment agreement with the Foundation ("Employment Agreement").

Yeckel filed the instant suit after Greg Abbott, Attorney General of the State of Texas ("the Attorney General"), the intervenor in this lawsuit, joined later by the Foundation as

---

[1]In deciding the Foundation's and the Attorney General's Rule 12(b)(1) motions, the court can consider evidence in addition to the allegations of Yeckel's first amended complaint because the Foundation has presented evidence in support of its motion and the Attorney General has adopted the Foundation's motion and has also presented evidence.  It is settled that, if a defendant merely files a Rule 12(b)(1) motion, it is considered a facial attack, and the court is required to examine the sufficiency of the allegations of the complaint, assuming them to be true.  *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981).  The motion is denied if the allegations are sufficient to allege jurisdiction.  *Id.*  A defendant may make a factual attack on subject matter jurisdiction by submitting evidence, such as affidavits or testimony.  *Id.*  When a factual attack is made, the plaintiff must come forward with proof and demonstrate by a preponderance of the evidence that the court has subject matter jurisdiction.  *Id.*  Accordingly, the court's recitation of the background facts is based upon undisputed facts or upon a preponderance of the evidence.

[2]In his first amended complaint, Yeckel refers to the Program as the "Pension Plan."  *See, e.g.,* Am. Compl. ¶ 3.3.  The court will do so as well.

coplaintiff, sued Yeckel and others[3] and obtained a judgment against them in a Texas county probate court. *See Atty. Gen. ex rel. The Carl B. and Florence E. King Found. v. Yeckel*, No. 77,995-A (Probate Ct. No. 1, Travis County, Tex.), *appeal docketed*, No. 03-04-00713-CV (Tex. App. Austin November 18, 2004) ("Probate Suit").[4]  They alleged, *inter alia*, that Yeckel had received excessive compensation from the Foundation, had misused charitable trust assets, and had breached his common law trust and statutory fiduciary duties and violated Texas public policy. *See* Found. Mot. to Dismiss Ex. C at 5-7, 11-12.[5]  They sought as part of the requested relief a judgment that the Employment Agreement was void *ab initio* because it violated public policy, was not authorized, approved, or ratified by the Foundation's Board of Directors, or was not fair to the Foundation.  Following a jury trial, the

---

[3]They also sued Thomas W. Vett, the Foundation's former Secretary, and William Jordan, Esquire, a former member of the Board of Directors who provided legal services to the Foundation and Yeckel, among others.

[4]Shortly after the appeal was scheduled for oral argument, Yeckel filed for bankruptcy.  The bankruptcy court later lifted the automatic stay, however, so that the case could be argued.

[5]The court cites "Exhibit C" because the Foundation (and the Attorney General) failed to comply with N.D. Tex. Civ. R. 7.1(i)(1) in briefing these motions.  Rule 7.1(i)(1) provides that "[a] party who relies on documentary (including an affidavit, declaration, deposition, answer to interrogatory, or admission) or non-documentary evidence to support or oppose a motion must include such evidence in an appendix."  Although they failed to include their evidence in appendixes, because this deficiency did not interfere with the decisional process of the court, the court considered the documents that defendants submitted.

probate court entered a modified final judgment that provided, in relevant part, that the Employment Agreement was void *ab initio*. *See id.* Ex. F at 3. Yeckel filed a notice of appeal to the Texas Court of Appeals in Austin, Texas on November 18, 2004. The appeal was pending at the time Yeckel filed this lawsuit, and it is still pending.

Yeckel relies on the Employment Agreement in this court, as he did in his probate court counterclaims, to maintain that he is covered by, and entitled to retirement pension and welfare benefits under, an ERISA plan.[6] The judgment denied Yeckel all relief that he sought based on his ERISA-based counterclaims.

Yeckel alleges that the Foundation is violating ERISA by relying on the Probate Suit judgment to refuse to honor its obligations under the Pension Plan and ERISA. He posits that the probate court lacked jurisdiction to use state fiduciary duty law to deny ERISA-covered benefits, because such benefits are within the exclusive jurisdiction of federal district courts. Yeckel avers that his suit consists of causes of action under federal law for enforcement under the civil enforcement scheme of ERISA and falls within the complete preemption doctrine and is within the exclusive jurisdiction of a federal district court. He sues in

---

[6]Yeckel also alleges that his spouse is entitled to benefits as his beneficiary. For simplicity, the court will refer throughout this opinion to Yeckel as seeking benefits on his own behalf.

- 4 -

count 1 under 29 U.S.C. § 1132(a)(1)(A), alleging that he is entitled to a penalty of $100 per day based on the Foundation's refusal to provide him information relating to the Pension Plan. He also seeks in this count a $10,000 fine under § 1132(c) for the Foundation's continuing refusal to turn over requested information. In count 2, Yeckel seeks a judgment under 29 U.S.C. § 1132(a)(3)(B) and 28 U.S.C. §§ 2201-02[7] declaring that (1) the Pension Plan exists, (2) it is covered by ERISA, (3) the Employment Agreement was completed at his retirement and the probate court judgment voiding the Agreement is moot, (4) the Pension Plan falls within the exclusive jurisdiction of the federal courts, state breach of fiduciary laws are completely preempted by ERISA, and defendants cannot deny Yeckel his pension benefits based on the Probate Suit judgment, and Yeckel and is entitled to pension benefits under the Pension Plan.  Yeckel also seeks in this count a judgment that prescribes the amount and terms of his pension benefit payments, an immediate payment of arrearage benefits; an injunction preventing defendants from failing and refusing to comply with the terms of the Pension Plan and from refusing to pay him future benefits; attorney's fees; and replacement of Pension Plan assets that have been converted, dissipated, or cashed by the Foundation or Pension Plan sponsor.

---

[7]Yeckel does not cite these statutory provisions in count 2. He cites them earlier in his complaint when describing the nature of the case. *See* Am. Compl. ¶ 2.1(b) and (c).

The Foundation moves to dismiss under Rule 12(b)(1) and (b)(6).[8] It maintains that the claims Yeckel brings here were asserted as counterclaims in the Probate Suit, that they were rejected in that litigation, and that he must now obtain relief through the state appellate process.[9] The Attorney General as intervenor joins the Foundation's motion, and he also moves the court under Rules 12(b)(1) and (b)(6) to dismiss or abstain. Both motions present the question whether Yeckel's suit is barred by the *Rooker-Feldman* doctrine and/or by the doctrines of res judicata and/or collateral estoppel. The Attorney General requests in the alternative that the court abstain under various abstention doctrines. The Foundation also moves under Rule 11 for sanctions against Yeckel and/or his counsel.

---

[8]The Foundation has filed this motion on its own behalf. It specifically denies that the Pension Plan exists. Solely to avoid a default, however, it moves to dismiss on behalf of the Pension Plan. The court's decision applies both to the Foundation and to the Pension Plan.

[9]The Foundation contends under the *Rooker-Feldman* doctrine that the court lacks jurisdiction "and this case should be dismissed with prejudice." Found. Mot. to Dismiss 5, ¶ 10. It is well settled, however, that a dismissal for lack of subject matter jurisdiction is *without* prejudice. *See, e.g., Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

II

The court will consider together the Foundation's and the Attorney General's motions based on the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction in an action" where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). The rationale underlying *Rooker-Feldman* is that the district court lacks jurisdiction to hear an appeal of a state case. *See id.* at 284-85. The Supreme Court is the only federal court with "appellate authority 'to reverse or modify' a state-court judgment." *Id.* at 284 (quoting *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)).

Where the federal case was filed before the state proceedings ended, the existence of the state case does not strip the federal court of subject matter jurisdiction. *See id.* at 292 ("[N]either *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court."). Rather, if the state adjudication finishes before the federal adjudication, then preclusion principles, which are not jurisdictional, govern. *See id.* at 293.

Under *Exxon* "a state court judgment is sufficiently final for operation of the *Rooker-Feldman* doctrine[ ] when 'the state proceedings [have] ended.'" *Rowley v. Wilson*, 2006 WL 2233221, at *1 (5th Cir. Aug. 4, 2006) (per curiam) (unpublished opinion) (quoting *Exxon*, 544 U.S. at 291).  If the state trial-court judgment has been appealed and the federal case is filed before the state appeal is resolved, then the state proceedings have not ended by the time the federal case is filed, and *Rooker-Feldman* is inapplicable. *See id.* ("At the time appellants filed this federal lawsuit, their state proceedings had not ended.  The state case was on appeal to the Louisiana appellate court.  Accordingly, the *Rooker-Feldman* doctrine is inapplicable.").

In the instant case the state trial court judgment has been appealed.  The appeal was pending at the time this suit was filed, and it is still pending.  Consequently, the court concludes that the state proceedings have not ended for *Rooker-Feldman* purposes and that the doctrine is therefore inapplicable.

III

The Foundation and the Attorney General also move to dismiss under Rule 12(b)(6)[10] on the ground that Yeckel's claims are

---

[10]Defendants' motions to dismiss are brought under Rule 12(b)(1) and (6).  A Rule 12(b)(1) motion is a motion to dismiss for lack of subject matter jurisdiction.  Because the preclusion doctrines of res judicata and collateral estoppel are not jurisdictional in nature, *see Exxon*, 544 U.S. at 293 ("Preclusion, of course, is not a jurisdictional matter" (citing Rule 8(c)), the court will consider them in the context of Rule 12(b)(6), not (1).

precluded under Texas law and are subject to the defenses of res judicata and collateral estoppel. The court will consider the Foundation's and the Attorney General's motions together.

A

In deciding a Rule 12(b)(6) motion, the court construes the complaint in the light most favorable to plaintiff, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in his favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). The court will not grant a 12(b)(6) motion to dismiss "unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) (Fitzwater, J.) (addressing Rule 12(c) standard) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)).

"In determining whether the present suit is barred by the state court judgment, the court applies state law." *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F. Supp. 2d 698, 710 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Landscape Design & Constr., Inc. v. Transp. Leasing/Contract, Inc.*, 2002 WL 257573, at *3 (N.D. Tex. Feb 19, 2002) (Fitzwater, J.)). "Under Texas law, res judicata and collateral estoppel apply if this action is based on the same claims as were raised or could have been raised in state court."

*Id.* (citing *Transp. Concepts, Inc. v. San Francisco French Bread Co.*, 2000 WL 1175642, at *1 (N.D. Tex. Aug. 17, 2000) (Fitzwater, J.); *Dittmann v. City of Garland*, 1998 WL 574774, at *3 (N.D. Tex. Aug. 31, 1998) (Fitzwater, J.)). "[A] subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit." *Hawk v. Williams*, 2003 U.S. Dist. LEXIS 20386, at *11 (N.D. Tex. Nov. 13, 2003) (Fitzwater, J.) (unpublished opinion) (alteration in original) (quoting *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992)). "Res judicata bars 'the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit.'" *Id.* at *11-12 (citing *Barr*, 837 S.W.2d at 628). "Res judicata requires proof of '(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action.'" *Id.* at *12 (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)). "[A] judgment is final for the purposes of issue and claim preclusion 'despite the taking of an appeal unless what is called an appeal actually consists of

a trial de novo.'" *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986) (quoting Restatement (Second) of Judgments § 13).[11]

B

Yeckel does not dispute that the second and third res judicata elements are satisfied in this case. He maintains only that his claims are not precluded because the Texas probate court lacked subject matter jurisdiction to enter a judgment that related to his ERISA-covered retirement benefits plan, and the judgment was therefore void in this respect.[12]

Yeckel specifically argues that, although his compulsory counterclaim for recovery of benefits fell within the apparent purview of concurrent state-court jurisdiction under 29 U.S.C. § 1132(a)(1)(B), the judgment that the probate court entered did not rest on the evaluation of the Pension Plan under 29 U.S.C.

---

[11]For this reason, the doctrine of res judicata can apply under Texas law to a final judgment that has been appealed, even if the *Rooker-Feldman* doctrine does not apply because the federal case was filed while the state appeal was still pending.

[12]Res judicata is an affirmative defense. *Hawk*, 2003 U.S. Dist. LEXIS 20386, at *7. "In the usual case, this court is unable to grant dismissal under Rule 12(b)(6) based on an affirmative defense because it rarely appears on the face of the complaint." *Simon v. Telsco Indus. Emp. Benefit Plan*, 2002 WL 628656, at *1 (N.D. Tex. April 17, 2002) (Fitzwater, J.). Here, however, the Foundation and the Attorney General have presented documents from the Probate Suit that are the type that can be considered on motion to dismiss and that establish without dispute that Yeckel's suit is barred by res judicata. Moreover, as noted, Yeckel challenges the application of this doctrine only on one ground: that the Texas probate court lacked subject matter jurisdiction. He does not object to reliance on the Probate Suit documents.

§ 1132(a)(1)(B), but instead on his offensive and defensive claims, which were in direct conflict with the exclusive federal subject matter jurisdiction under § 1132, ERISA's civil enforcement scheme, and in direct conflict with the exclusive remedies for fiduciary duties under ERISA.  Therefore, the probate court exceeded its authority under ERISA and lacked subject matter jurisdiction to enter the portion of its judgment that voided his ERISA-covered retirement benefits under the Pension Plan.  He posits that the judgment in the Probate Suit was thus void as it related to the ERISA-covered retirement benefits plan, and under Texas law a void judgment has no preclusive effect and may be challenged at this time in this court.

He reasons that 29 U.S.C. § 1132(a)(1)(B) and (e) provide for concurrent jurisdiction over three categories of claims by a beneficiary, but all other ERISA actions are within the exclusive jurisdiction of the federal courts.  Because he was fully retired when the Probate Suit was tried, the Employment Agreement that the Attorney General and the Foundation challenged in that suit had relevance only respecting its references to the existing ERISA-covered retirement plan.  The Foundation sought to use the jury findings based on state breach of fiduciary duty law and other state-law issues to void and destroy his retirement benefits under the ERISA-covered plan.  Although his counterclaim would normally fall within 29 U.S.C. § 1132(a)(1)(B) for recovery of benefits and

within the probate court's concurrent jurisdiction, the Foundation's breach of fiduciary duty and other state-law claims led the probate court to enter a judgment based on state court laws that, due to ERISA complete preemption, it lacked subject matter jurisdiction to enter. The probate court entered a judgment that sustained a state-law claim for breach of fiduciary duty and on other state-law grounds that purported to void Yeckel's entitlement to retirement benefits due under an ERISA-covered retirement benefit plan. Federal courts have exclusive jurisdiction to hear such cases and over any such remedy or cause of action. According to Yeckel, he asserted in the probate court a compulsory counterclaim under 29 U.S.C. § 1132(a)(1)(B). The probate court would have had subject matter jurisdiction to interpret as a matter of contract interpretation whether he was entitled to receive benefits. But the probate court instead relied on the jury verdict on state tort claims and state common law issues to enter a judgment that conflicted with ERISA's civil enforcement scheme and its remedies and standards.

C

Yeckel's jurisdictional arguments are flawed. First, even assuming *arguendo* that the probate court decided the precise question whether the Employment Agreement was an ERISA plan—as opposed to deciding the preliminary question whether the agreement

that conferred Pension Plan benefits on Yeckel was void *ab initio*——it had subject matter jurisdiction to do so.

> ERISA nowhere makes federal courts the exclusive forum for deciding the ERISA status *vel non* of a plan or fiduciary. Unless instructed otherwise by Congress, state and federal courts have equal power to decide federal questions. Because ERISA is silent on the matter of the power to declare ERISA status, we conclude that the question of [plaintiffs's] ERISA status falls under the usual concurrent state and federal jurisdiction.

*Int'l Ass'n of Entrepreneurs of Am. v. Angoff*, 58 F.3d 1266, 1269 (8th Cir. 1995) (citations omitted) (citing *Fed. Exp. Corp. v. Tenn. Pub. Serv. Comm'n*, 925 F.2d 962, 968 (6th Cir. 1991)); *CSXT, Inc. v. Pitz*, 883 F.2d 468, 472 (6th Cir. 1989)). This court has also held "that state courts as well as federal courts are of competent jurisdiction to determine whether a particular plan is governed by ERISA and therefore not by state law." *Browning Corp. Int'l v. Lee*, 624 F.Supp. 555, 557 (N.D. Tex. 1986) (Mahon, J.).

Second, the so-called offensive and defensive claims of the Attorney General and the Foundation in the probate court[13] were not within the exclusive jurisdiction of federal courts. Yeckel treats these claims as if they were in substance ERISA civil actions. He

---

[13]It is apparent from Yeckel's briefing that the references to "offensive and defensive claims" are to the allegations of the Attorney General and the Foundation that Yeckel breached state-law fiduciary duties, committed fraud under state law, and violated other state common law, which they asserted both as grounds to obtain affirmative relief from Yeckel and to defeat his counterclaims.

argues that because they did not fall within § 1132(a)(1)(B), they were within the exclusive jurisdiction of the federal courts under 29 U.S.C. § 1132(e)(1). *See, e.g.,* P. Br. Resp. to Found. Mot. to Dismiss 9 (arguing that, aside from claims within the scope of § 1132(a)(1)(B), "[a]ny other civil ERISA action is within the exclusive jurisdiction of the Federal Courts."). Yeckel's arguments rest on a misunderstanding of § 1132(e)(1).

Section 1132(e)(1) provides that,

> [e]xcept for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions *under this subchapter* brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.

*Id.* (emphasis added).

> Section 502 of ERISA, 29 U.S.C. § 1132(a) (1976), provides that a civil action may be brought *under ERISA* by a plan "participant," "beneficiary," or "fiduciary," or by the Secretary of Labor. That provision, 29 U.S.C. § 1132(e)(1), also confers exclusive jurisdiction on federal courts *to hear these actions*.

*Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1287 (5th Cir. 1988) (emphasis added; footnote omitted). In the probate court lawsuit, the Attorney General filed and the Foundation alleged that the Employment Agreement was void *ab initio* because it

violated public policy, was not authorized, approved, or ratified by the Foundation's Board of Directors, or was not fair to the Foundation. The claims asserted against Yeckel were not brought *under ERISA;* they were asserted under *state law.*[14] Section 1132(e)(1) did not, therefore, vest the federal district courts with exclusive jurisdiction over the claims.

In fact, not only would federal courts *not* have had exclusive jurisdiction, the state-law claims of the Attorney General and the Foundation would not even have been completely preempted under ERISA.[15] There are two types of ERISA preemption. *See Ellis v. Liberty Life Assur. Co. of Boston,* 394 F.3d 262, 275 n.34 (5th Cir. 2004) (discussing conflict and complete preemption in ERISA context).[16] Conflict (or ordinary) preemption occurs (1) when there is a direct conflict between the operation of federal and state law

---

[14]Section 1132(e)(1) incorporates by reference § 1021(f). Section 1021(f) refers to the administrator of a defined benefit plan that is a multiemployer plan. *See* 29 U.S.C. § 1021(f).

[15]A claim can be completely preempted under ERISA without necessarily being within the exclusive jurisdiction of the federal courts. As the court explains *infra*, a claim is completely preempted when the remedy falls within the scope of § 1132(a). A state-law claim that seeks a remedy like one available under § 1132(a)(1)(B) is therefore completely preempted and removable to federal court. But even Yeckel recognizes that a state court of competent jurisdiction can exercise subject matter jurisdiction over such a claim.

[16]Yeckel includes in his brief lengthy discourses on ERISA preemption that appear to blur the conceptual distinctions among ERISA exclusive jurisdiction, complete preemption, and conflict or ordinary preemption. *See, e.g.,* P. Br. Resp. to Found. Mot. to Dismiss 7.

so that it is impossible to comply with both, or (2) when the state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'" in the federal statute. *Boggs v. Boggs*, 520 U.S. 833, 844 (1997) (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992)); *see Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000). "In general, complete preemption exists when a remedy falls within the scope of or is in direct conflict with [29 U.S.C. § 1132(a)], and therefore is within the jurisdiction of federal court." *Haynes v. Prudential Health Care*, 313 F.3d 330, 333 (5th Cir. 2002) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987)). Yeckel appears at least inferentially to argue that the claims of the Attorney General and the Foundation for breach of fiduciary duty are completely preempted. He maintains that, because the Attorney General and the Foundation sought to declare the Employment Agreement void on the basis that Yeckel had breached his fiduciary duties under state law, and because ERISA §§ 1104 and 1109 provide a claim and remedy for breach of fiduciary duty, the claims were completely preempted under ERISA and the court lacked subject matter jurisdiction to the extent it voided his retirement benefits under the Pension Plan.

Section 1132(a)(2) confers on the Secretary of Labor, or a participant, beneficiary, or fiduciary, the right to bring a civil action for appropriate relief under § 1109. Such a claim is within

- 17 -

the exclusive jurisdiction of the federal courts.  *See Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 347 (5th Cir. 1989) ("[Section 1132(a)(2)] authorizes either the Secretary of Labor or a 'participant,' 'beneficiary' or 'fiduciary' to bring a civil action for breach of fiduciary duty as proscribed by § 1109(a).  Section 1132(e)(1) confers exclusive jurisdiction on federal courts to hear such actions.").  Section 1109(a) creates liability for breach of fiduciary duty for "[a]ny person who is a fiduciary with respect to a plan."  *Browning v. Levy*, 283 F.3d 761, 778-79 (6th Cir. 2002) (quoting § 1109(a)).  The Attorney General and the Foundation did not sue Yeckel, however, as a fiduciary of the Pension Plan for breaching fiduciary duties owed to the plan. They sued him as a fiduciary of the citizens of the state of Texas (due to the Foundation's status as a charitable organization) and of the Foundation for breaching fiduciary duties to the citizenry at large and to the Foundation.  And they did not, as § 1109 requires, sue to obtain relief for the Pension Plan.  *See Farrell v. Auto. Club of Mich.*, 870 F.2d 1129, 1133 (6th Cir. 1989) ("Section 1109 authorizes relief only to the plan itself, not to individual beneficiaries."  (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985)).  Accordingly, their breach of fiduciary duty claims were not completely preempted as claims that sought remedies under § 1132(a)(2).

Yeckel's sole basis for opposing the application of res judicata therefore fails. The court holds that Yeckel's lawsuit is barred by res judicata doctrine, and it dismisses this action with prejudice.

                              IV

The Foundation moves under Rule 11 for sanctions against Yeckel and/or his counsel based on the claims brought in this lawsuit. It maintains that this suit has been brought for an improper purpose, the suit is prohibited and not warranted by existing law, and the allegations and factual contentions lack evidentiary support.

Yeckel objects to the Foundation's motion for sanctions on the ground that it does not comply with N.D. Tex. Civ. R. 7.1(b), (h), (i), 7.2(d). He also maintains that he brought the suit for a proper purpose, his claims are warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law, and each allegation and factual contention contained in his first amended complaint has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for discovery. Yeckel also objects to the requested amount of sanctions as excessive and unsupported by the evidence.

The court denies the motion without prejudice. The Foundation's motion is premised materially, if not largely, on the *Rooker-Feldman* doctrine, *see* Found. Mot. for Sanctions 1-2, 10-11,

which the court has today held inapplicable. The Foundation should therefore reexamine in light of today's decision whether it desires to pursue such a motion and, if so, whether the renewed motion should be refined in terms of the grounds and rationale on which it is based.[17]

\*   \*   \*

Accordingly, for the reasons stated, the court grants the Foundation's March 22, 2006 motion to dismiss under Rule 12(b)(6), and it grants the Attorney General's April 3, 2006 motion to dismiss under Rule 12(b)(6), it denies the Rule 12(b)(1) motions of the Foundation and the Attorney General, and it dismisses this action with prejudice by judgment filed today. The court denies without prejudice the Foundation's May 30, 2006 motion for sanctions.

**SO ORDERED.**

August 21, 2006.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[17]Although the court has dismissed this action with prejudice, it retains jurisdiction to address a renewed motion for Rule 11 sanctions, if one is filed. *Cf. Cooter & Gell v. Hartmarx*, 496 U.S. 384, 395-96 (1990) (holding that district court has jurisdiction to impose sanctions under Rule 11 even after case has been voluntarily dismissed under Rule 41(a)(1)).